IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 20, 2006 Session

## STATE OF TENNESSEE v. LEROY SEXTON

**Direct Appeal from the Criminal Court for Fentress County**
**No. 7977     Shayne Sexton, Judge**

---

**No. M2004-03076-CCA-R3-CD - Filed January 12, 2007**

---

Following a jury trial, Defendant, Leroy Sexton, was convicted of rape of a child and was sentenced to serve twenty-five years confinement in the Department of Correction. Defendant subsequently filed a motion for new trial which was denied by the trial court. He now appeals arguing that he is entitled to a new trial because (1) he received ineffective assistance of counsel at trial, and (2) the trial court committed reversible error by allowing the prosecutor to make improper statements during closing argument. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Mark E. Blakely, Huntsville, Tennessee; (on appeal), John E. Appman, Jamestown, Tennessee, (at trial), for the appellant, Leroy Sexton.

Robert E. Cooper, Jr., Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General, William Paul Phillips, District Attorney General; and John W. Galloway, Jr., Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

The minor victim, T.C., will be referred to by his initials. Gerthie Faye and Willard Crabtree lived with their son, Timmy Crabtree, and their grandson, T.C. Ms. Crabtree testified that T.C. was born on May 15, 1995, and was five years old at the time of the incident. Ms. Crabtree said that Defendant and her daughter, Christy Sexton, visited the family on June 28, 2000. During the afternoon, Defendant, with T.C. as an observer, engaged in shooting a pellet gun at a tree while the rest of the family sat on the front porch. T.C. returned to the front porch at some point and asked Willard Crabtree for a knife so that Defendant could pick out some of the pellets that were stuck in

the tree. Ms. Crabtree said that she next heard her son, Timmy, yelling, and Williard Crabtree and Ms. Sexton went to investigate. Ms. Crabtree said that she later accompanied T.C. and Timmy Crabtree to the Fentress County Sheriff's Department. Ms. Crabtree said that T.C. told her that Defendant had put his "pee-pee" in T.C.'s mouth. Ms. Crabtree said that Timmy Crabtree had been home all day and that to her knowledge, he was not under the influence of drugs or alcohol on the afternoon of the incident.

Timmy Crabtree testified that he looked towards the backyard during the afternoon of June 28, 2000, and saw Defendant standing by an outbuilding with his back turned toward Mr. Crabtree. Mr. Crabtree walked around the side of the building and saw Defendant standing in front of T.C. with his penis in T.C.'s mouth. Defendant had his hand on T.C.'s left shoulder. Mr. Crabtree said that he and Defendant had an altercation as a result of the incident. Mr. Crabtree acknowledged that he was on probation at the time of the trial, and that he had various prior convictions for forgery, driving under the influence, public drunkenness and drug-related charges. Mr. Crabtree denied that he had drunk any alcohol or smoked any marijuana the afternoon of the incident.

On cross-examination, Mr. Crabtree acknowledged that he pulled out a knife during his altercation with Defendant. Mr. Crabtree said that when he saw what was happening, he yelled, and Defendant jumped back. Defendant's penis slid out of T.C.'s mouth, and Defendant zipped up his pants before the others arrived. Mr. Crabtree said he had previously lived with Defendant and Christy Sexton for awhile, and that he gave Defendant's address to the Social Security Administration in order to receive his disability checks. Mr. Crabtree said that he recorded $300.00 as his rental expense on his application for disability, but he acknowledged that he only paid $100.00 in rent to the Sextons. Mr. Crabtree acknowledged that Defendant and Ms. Sexton reported the discrepancy to the social security office in Cookeville. Mr. Crabtree said that he "got aggravated [with Defendant and Ms. Sexton,] but not that bad."

Willard Crabtree testified that he told Timmy Crabtree that Defendant and T.C. were in the backyard picking pellets out of a tree on the afternoon of the incident. Willard Crabtree said that Timmy Crabtree then walked into the yard. Willard Crabtree said that he heard "cussing," and he and Ms. Sexton went to investigate. Willard Crabtree asked T.C. to tell him what happened, and T.C. told Willard Crabtree that Defendant put his penis in T.C.'s mouth.

T.C. was shown a diagram of a nude male figure during his testimony. T.C. identified the figure's penis and said that he called it a "wee-wee." T.C. testified that Defendant's "wee-wee" went inside T.C.'s mouth.

Wendall Reagan, who was chief deputy with the Fentress County Sheriff's Department at the time of the incident, testified that Gerthie Crabtree, Timmy Crabtree, and T.C. came to his office on June 28, 2000. Deputy Reagan said that Timmy Crabtree was angry and very upset, but he did not appear to be under the influence of drugs or alcohol. Deputy Reagan secured a warrant for Defendant's arrest based on the information provided by Timmy Crabtree and T.C. Defendant was not home, and Ms. Sexton told Deputy Reagan that Defendant had gone to Knoxville to check on

a job. Deputy Reagan said he later found Defendant in Judy Ecret's backyard in Jamestown and arrested him.

The State rested its case-in-chief. Christy Sexton testified that she and Defendant arrived at her parents' house between 4:00 p.m. and 4:30 p.m. on June 28, 2000. Ms. Sexton said she heard a commotion by an outbuilding on her parents' property. Ms. Sexton said she grabbed Timmy Crabtree by the shirt and asked what was going on. Ms. Sexton said that Timmy Crabtree told T.C. to say that Defendant had put his penis in T.C.'s mouth. Ms. Sexton said that she asked T.C. if Defendant had done anything to him, and T.C. told her "no." Ms. Sexton said that T.C. told her that Defendant had been urinating, and Ms. Sexton said that she observed that the side of the outbuilding was wet. Ms. Sexton said that she saw Timmy Crabtree smoking marijuana in his vehicle before her parents arrived.

Ms. Sexton questioned T.C. about the incident a second time a few days later when T.C. was visiting her apartment. T.C. again told her that nothing had happened and Defendant did not touch him. Ms. Sexton said that Ledena Durham was present during both of these conversations.

On cross-examination, Ms. Sexton acknowledged that she brought T.C. to her apartment a few days after the incident in order to record her conversation with the child. Ms. Sexton denied telling her mother that she would give Timmy Crabtree a Ford Bronco and $200.00 if he would change his story about what he witnessed. Ms. Sexton said that T.C. had visited her and Defendant when they lived in Knoxville.

Ledena Durham said she was present in Ms. Sexton's apartment when Ms. Sexton recorded her conversation with T.C. Ms. Durham said that T.C. told Ms. Sexton twice that Defendant had not engaged in any inappropriate behavior with him. On cross-examination Ms. Durham denied that recording T.C.'s conversations was Defendant's idea.

The State recalled Willard Crabtree as a rebuttal witness. Mr. Crabtree stated that "they" said Defendant had urinated on the outbuilding. Mr. Crabtree said that he went down to check the outbuilding a few minutes after the family left for the sheriff's department and the side of the outbuilding was not wet.

Gerthie Crabtree, testifying as a rebuttal witness, said that Ms. Sexton told Ms. Crabtree that she was taking T.C. to her apartment to swim. Ms. Sexton did not tell Ms. Crabtree that she planned to record Ms. Sexton's conversation with T.C. Ms. Crabtree said that T.C. never told her that Defendant did not put his penis in T.C.'s mouth. Ms. Crabtree said that Ms. Sexton told her that she would give Timmy Crabtree $200.00 and the Sextons' Bronco if he would change his story. Ms. Crabtree said that Timmy Crabtree refused to change his story.

## II. Analysis

### A. Ineffective Assistance of Counsel

Trial counsel was relieved of representing Defendant following the trial and sentencing hearing. Defendant filed a motion for new trial and was appointed new counsel. Defendant's new counsel filed an amended motion for new trial and presented and argued the amended motion to the trial court. This appeal followed.

In his first issue, Defendant contends that he received ineffective assistance of counsel because (1) counsel allowed the victim to testify about prior bad acts and sex crimes committed by Defendant during counsel's cross-examination of the victim, and (2) counsel failed to object to the prosecutor's improper statements during closing arguments.

Defendant included his claim for ineffective assistance of counsel in his motion for new trial. This Court has consistently "warned defendants and their counsel of the dangers of raising the issue of ineffective assistance of trial counsel on direct appeal because of the significant amount of development and fact finding such an issue entails." *Kendricks v. State*, 13 S.W.3d 401, 405 (Tenn. Crim. App. 1999). Raising the issue of ineffective assistance of counsel on direct appeal is "a practice fraught with peril." *State v. Thompson*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997). This peril is two-fold. First, ineffective assistance can rarely be established without an evidentiary hearing. *See Strickland v. Washington,* 466 U.S. 668, 689-90, 694, 104 S. Ct. 2052, 2065, 2067, 80 L. Ed.2d 674 (1984). Post-conviction procedures afford an evidentiary hearing to a Defendant with colorable claims. *See* T.C.A. §§ 40-30-109(a), - 110 (2006). Second, raising the issue in the direct appeal could result not only in losing on appeal, but also in barring the claimant from raising the issue later in the post-conviction arena. T.C.A. §§ 40-30-106(f) & (h) (2006). A post-conviction claim for ineffective assistance of counsel will be dismissed where that claim has previously been determined by another court. T.C.A. § 40-30-106(f). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." T.C.A. § 40-30-106(h).

Defendant made detailed allegations of ineffective assistance of counsel in his motion for new trial, although not all of those allegations are argued on appeal. His trial counsel, who Defendant alleges rendered ineffective assistance of counsel, testified at the hearing on the motion for new trial. Defendant also testified. Accordingly, Defendant had and executed the opportunity to call witnesses and present other evidence on the issue of ineffective assistance of counsel. Defendant has presented the issue of ineffective counsel in this appeal, and this Court will therefore address the issue on the merits.

Under Tennessee Code Annotated section 40-30-110(f) (2003), a defendant seeking post-conviction relief on the basis of ineffective assistance of counsel is required to prove his or her allegations "by clear and convincing evidence." This same standard should apply even when the

claim of ineffective assistance of counsel is raised on direct appeal. *State v. Burns*, 6 S.W.3d 453, 461 n.5 (Tenn. 1999) (citing *State v. Anderson,* 835 S.W.2d 600, 607 (Tenn. Crim. App. 1992)).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the defendant must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a defendant raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." *Id*. Failure to satisfy either prong results in the denial of relief. *Id*. at 697, 104 S.Ct. at 2069.

In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

In the present case, the focus of Defendant's argument on appeal is that trial counsel was ineffective as a result of his deficient performance during cross-examination of the victim. He argues that counsel's performance fell below the required standard when he elicited responses from the victim which indicated that Defendant engaged in sexual acts with the victim prior to those acts for which he was on trial. Defendant cites the following portion of the trial transcript in support of his argument:

[Trial Counsel:]    He just touched you with his penis or pee wee as you call it; is that right?

[T.C.:]    Yes.

| [Trial Counsel:] | And that's the first time that he had ever done anything like that? |
| --- | --- |
| [T.C.:] | No. |
| [Trial Counsel:] | No? When did it happen before? |
| [T.C.:] | Over in Knoxville. |
| [Trial Counsel:] | Who told you that? |
| [T.C.:] | Huh? |
| [Trial Counsel:] | Who told you that? |
| [T.C.:] | My pa. |
| [Trial Counsel:] | Your pa. Is that Jonathan, your dad? |
| [T.C.:] | No. |
| [Trial Counsel:] | Who, your - - Willard? |
| [T.C.:] | Yes. |
| [Trial Counsel:] | He's the one that told you that happened in Knoxville; is that right? |
| [T.C.:] | Yes. |
| [Trial Counsel:] | And other people have told you what has happened, what happened out there on the time that we've been talking about, isn't that true? |
| [T.C.:] | Yes. |

We cannot conclude on the record before us that counsel was ineffective in asking the above referenced questions. No evidence was introduced at the hearing on the motion for new trial which demonstrates that Defendant was prejudiced by counsel's actions. Despite the fact that trial counsel testified at the motion for new trial hearing, there was no testimony or other evidence elicited from trial counsel indicating whether the questions were part of his trial strategy or whether the testimony was mistakenly introduced into evidence. It is possible, as the State suggests, that the questions were counsel's attempt to show that the victim was merely parroting what his family members had told

him and not reporting actual events. Without further proof however, we cannot speculate as to trial counsel's intentions and therefore we cannot determine that his performance was deficient in this regard. As stated above, this Court may not second-guess a reasonably based trial strategy or criticize a sound, but unsuccessful, tactical decision made after adequate preparation for the case. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

With respect to Defendant's claim that counsel was ineffective for failing to make contemporaneous objections during the prosecutor's closing argument, we likewise cannot conclude that Defendant was prejudiced by counsel's performance. Defendant cites twelve statements made by the prosecutor during closing argument which he contends constitute prosecutorial misconduct. Our review reveals that trial counsel objected to one of these twelve statements. There is no proof in the record indicating why counsel chose not to object to the other statements. Without testimony from trial counsel or some evidence indicating that his decision was not a tactical one, we cannot determine that trial counsel provided anything other than effective assistance of counsel.

### B. Prosecutorial Misconduct

In his next argument, Defendant asserts that the prosecutor made improper statements during his closing argument. These "improper statements," which Defendant alleges constitute prosecutorial misconduct, are the same statements cited in his earlier argument in which he asserted that counsel rendered ineffective assistance of counsel by failing to object. Specifically, Defendant argues that the prosecutor asserted his personal belief as to Defendant's guilt, referred to matters not in evidence or previously ruled inadmissible by the trial court, and submitted an improper "golden rule argument" to the jury. The State counters that "eleven of the twelve remarks at issue were not even arguably improper, and none of the statements were so prejudicial as to affect the verdict." The State further argues that Defendant has forfeited consideration of eleven of the twelve statements on appeal because he failed to contemporaneously object to the statements at trial.

We agree with the State. With one exception, the record reflects that there were no contemporaneous objections to the prosecutor's statements during closing argument. The single statement objected to at trial is as follows:

> [Defense Counsel] still wants to have you believe that all this is just not probable that this is going to happen down there like that [sic]. Well, ladies and gentlemen, when you deal with people who would do these sort of things to little kids, they don't care. They have these some [sic] kind of urges that they've got to do them, and they take their opportunities where they can find them. Now, they don't pick on older kids that are vocal and aggressive and that sort of thing. They pick on little timid kids like [T.C.]. And when they get the urge, as he got the urge behind that building, they do it. And if it's a long time or some kind of quickie they want, that's what they do. And they pick on little kids that they don't think that will tell, that can be twisted around later.

-7-

Defense counsel objected to the statement on the ground that there was no evidence in the record to support the prosecutor's argument. The trial court sustained the objection on those grounds and admonished the prosecutor to confine his arguments to facts in the record. There was no objection to or assertion of prosecutorial misconduct at the time. Defendant did not request a mistrial, nor did he request that the trial court instruct the jury to disregard the remarks. Defendant cannot now argue on appeal that he is entitled to relief as a result of prosecutorial misconduct where the grounds were not previously raised.

Defendant has also forfeited his right to raise on appeal the other statements not objected to during trial. An appellate court is not obligated to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." *See* Tenn. R. App. P. 36(a); *see also State v. Robinson*, 146 S.W.3d 469, 511 (Tenn. 2004) (concluding that Defendant waived the issue of improper prosecutorial comments for failing to make a contemporaneous objection). However, under Rule 52 of the Tennessee Rules of Criminal Procedure, "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." Tenn. R. Crim. P. 52(b).

"[Rule 52] by its terms allows plain error review only where there is a failure to allege error in the new trial motion or where the error is not raised before the appellate court. Nevertheless, the rule has been interpreted by the appellate courts to allow appellate review under some circumstances in the absence of a contemporaneous objection as well." *State v. Raymond Edward Peebles*, No. M2005-01130-CCA-R3-CD, 2006 WL 2682817, *5 (Tenn. Crim. App., at Nashville, Sept. 12, 2006) (no Tenn. R. App. P. 11 application filed). In order to review an issue under the plain error doctrine, five factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *State v. Smith,* 24 S.W.3d 274, 282-83; *State v. Adkisson,* 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); *see also* Tenn. R. Crim. P. 52(b). "All five factors must be established by the record before" an appellate court may "recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Smith*, 24 S.W.3d at 283.

We conclude that the necessary elements for a finding of plain error are not satisfied in the present case. A thorough review of the record and the prosecutor's statements indicates that the statements do not constitute prosecutorial misconduct. *See State v. Goltz*, 111 S.W.3d 1, 5 -6 (Tenn. Crim. App. 2003) Any evidentiary issues surrounding the statements Defendant now protests were resolved during the course of the trial. Thus, we cannot find that any rule of law was breached as a result of the prosecutor's actions. Even were we to conclude that the prosecutor was guilty of misconduct, the factors for a finding of plain error are not satisfied. Although Defendant's trial counsel testified at the motion for new trial hearing, he was not asked about his reasons for not

raising other objections during the prosecutor's closing argument. Under these unique circumstances, Defendant has failed to show that trial counsel did not waive the opportunity to raise other objections for tactical reasons. Accordingly, we find no plain error. Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE